Rita Lackey Fillingim PEARSON,
Petitioner,

v.

Willis Dan FILLINGIM, Respondent.

No. 10–0013.

Supreme Court of Texas.

Jan. 14, 2011.

Rehearing Denied March 11, 2011.

Wyatt L. Brooks, Burdett, Morgan, Williamson & Boykin, LLP, Amarillo, TX, for Rita Lackey Pearson.

John Smithee, Joe W. Hayes, Templeton Smithee Hayes Heinrich & Russell, L.L.P., Amarillo, TX, for Willis Dan Fillingim.

PER CURIAM.

In this dispute over the division of property in a divorce decree, we must decide whether the trial court impermissibly reclassified an asset originally divided in a 1981 divorce decree. For the reasons expressed below, we hold that it did.

Rita Lackey Fillingim Pearson (Rita) and Willis Dan Fillingim (Dan) married on August 1, 1970. During the marriage, Dan's parents conveyed to Dan four deeds for mineral rights, which Dan and Rita jointly leased to third parties. Dan and Rita divorced on June 9, 1981.

The divorce decree states that "the estate of the parties be divided as follows" and divides property in the community estate into two schedules, one for Rita and one for Dan. The decree does not specifically mention the mineral rights that originally belonged to Dan's parents in its division, but does include residuary clauses in each schedule awarding both parties a "one-half interest in all other property or assets not otherwise disposed of or divided herein." Although there is no dispute that Dan was properly served in connection with the divorce proceedings, Dan neither appeared at the final divorce decree hearing nor hired an attorney to represent him at any point in the divorce proceedings. Dan has not made any other collateral attacks on the validity of the 1981 judgment. After the divorce, both Rita and Dan received royalties from the mineral rights.

At trial, Dan claimed that he assumed the royalties he was receiving amounted to 100% of the royalties, and that he did not find out that Rita was receiving royalties until March 2002. In April 2006, nearly twenty-five years after the divorce was entered, Dan filed a petition in the original divorce cause to clarify the decree with respect to the mineral rights he alleged were gifts to him from his parents during the marriage. Dan also filed a separate suit for declaratory judgment that the four mineral rights deeds were his separate property at the time of divorce. The trial court consolidated these two matters. Dan requested that the trial court clarify that the mineral rights were his separate property, as they were gifts from his parents and not divided by the divorce decree.[1] After hearing testimony from both parties and admitting the deeds into evidence, the trial court determined that the deeds were gifts from Dan's parents and thus Dan's separate property, and that the divorce decree did not partition the separate property of the parties. Judgment was entered, and Rita appealed.

The court of appeals initially reversed and rendered judgment for Rita. However, on rehearing, the court of appeals reasoned that the clause "the estate of the parties" from the original divorce decree only included community property. 332 S.W.3d 571. Because the trial court concluded that the mineral deeds were Dan's separate property, the court of appeals held that the residuary clauses in the divorce decree did not divide the mineral rights. The court of appeals also held that

---

1. Rita counterclaimed for unpaid child support, attorneys fees and costs. Dan filed a plea to the jurisdiction to dismiss Rita's claim, as over ten years had passed since their youngest child turned 18. The trial court granted his plea to the jurisdiction, and Rita's counterclaims are not before us.

the trial court's judgment was a clarification of the earlier divorce decree, rather than a substantive change, and thus the trial court had jurisdiction. *Id.* at 576.

We must decide whether the trial court had jurisdiction to "clarify" the decree through Dan's suit and whether the mineral leases in question were included in the 1981 decree. Under the Family Code, the court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree. TEX. FAM.CODE §§ 9.002, .008. If a decree is ambiguous, that court can enter a clarification order. *Id.* at §§ 9.006, .008. However, it is beyond the power of the court to "amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment." *Id.* at § 9.007(a). A judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property. *Reiss v. Reiss,* 118 S.W.3d 439, 443 (Tex.2003); *Baxter v. Ruddle,* 794 S.W.2d 761, 762–63 (Tex. 1990).

"[T]he estate of the parties" was to be divided as stated in the divorce decree's two schedules. Trial courts can only divide community property, and the phrase "estate of the parties" encompasses the community property of a marriage, but does not reach separate property. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 139 (Tex.1977) (citations omitted). Thus, "estate of the parties" in the Fillingim's divorce decree refers to community property only.

The issue, then, is whether the mineral rights were characterized as community property at the time of the 1981 divorce decree. Dan claims the mineral rights were a gift from his parents. The Family Code provides that gifts to a spouse during marriage are that spouse's

separate property. TEX. FAM.CODE § 3.001. However, section 3.003 also codified the common-law proposition that "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." *Id.* § 3.003(a); *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965); *Wilson v. Wilson,* 145 Tex. 607, 201 S.W.2d 226, 227 (1947). Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property. *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973). To do so, they must trace and clearly identify the property in question as separate by clear and convincing evidence. *Id.* (citing *Tarver,* 394 S.W.2d at 783); Tex. Fam.Code § 3.003. Dan did not attend the final hearing, much less offer proof that the deeds were his separate property. Thus, the deeds must be characterized as community property, even if the characterization was mistaken in 1981. *Reiss,* 118 S.W.3d at 443 ("[A] court has jurisdiction to characterize community property—even if it does so incorrectly.") (citation omitted).

The divorce decree did not specifically divide the mineral deeds, but the schedules included residuary clauses that awarded each party "[a] one-half interest in all other property or assets not otherwise disposed of or divided herein." Such residuary clauses, as opposed to more limited clauses that divide only the property "in possession" of the former spouses, have been held to effectively divide property not explicitly mentioned in the decree. *See Buys v. Buys,* 924 S.W.2d 369, 372 (Tex. 1996) (citations omitted). In *Buys,* this Court construed a residuary clause in a divorce decree that conveyed "all of the other properties, financial assets and belongings of the parties hereto, whether separate or community" to the wife. We held that the clause clearly and unambigu-

ously included community property assets that the trial court could have divided but did not specifically divide in the original divorce decree. *Id.* at 370, 372. Because Dan did not provide any evidence that the deeds were separate property, they were encompassed in the "estate of the parties" and were divided by the divorce decree's residuary clauses.

 Certainly, a court cannot divest an owner of separate property. *Eggemeyer,* 554 S.W.2d at 140–41 (concluding that taking separate property from one spouse and giving it to the other violates Article I, section 19 of the Texas Constitution). But whether the mineral deeds were originally Dan's separate property or not, they were properly deemed community property when he failed to rebut the Family Code's presumption of community property in the original hearing. *See Tarver,* 394 S.W.2d at 783. This is not a divestiture of separate property, but a necessary classification of property as set by the community presumption. Even further, as this Court stressed in *Reiss v. Reiss,* "a court has jurisdiction to characterize community property—even if it does so incorrectly." 118 S.W.3d at 443. Dan did nothing to prove that the mineral rights were gifts in the original hearing, and there is no presumption they were his separate property. To hold otherwise would undermine the finality of divorce decrees by opening them up to collateral attacks (notwithstanding the state of the record in the original divorce proceeding), undermine the Family Code's presumption that all property in the parties' possession is community, and turn residuary clauses in existing decrees into invitations to relitigate property divisions that former spouses now dislike.

 A final, unambiguous divorce decree that disposes of all marital property bars relitigation. *Shanks v. Treadway,* 110 S.W.3d 444, 449 (Tex.2003). All property acquired during a marriage is presumed to be community property, and the burden is placed on the party claiming separate property to prove otherwise, which Dan failed to do in the original proceeding. Because the mineral rights were not divided elsewhere in the decree and were treated as community property for the reasons discussed above, the residuary clauses in the decree clearly and unambiguously included and divided the mineral rights between Dan and Rita. Therefore, the deeds were divided by the original decree, and there is no jurisdiction to modify that division.

The trial court lacked jurisdiction to alter the original divorce decree, and the court of appeals erred in affirming the trial court's declaration that the deeds were Dan's separate property. Accordingly, and without hearing oral argument, TEX. R.APP. P. 59.1, we reverse the court of appeals' judgment and render judgment dismissing Dan's claims for want of jurisdiction.