# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00576-CV

---

**Douglas Walter Kirk, Appellant**

**v.**

**Valerie Ann Kirk, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. C2017-0486A, THE HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In August 2017, the trial court signed a divorce decree dissolving the marriage of pro se appellant Douglas Walter Kirk[1] and appellee Valerie Ann Kirk.[2] Douglas did not answer or appear. In March 2018, Douglas filed a motion to modify, which was denied when the trial court granted Valerie's motion for summary judgment, ruling that it did not have plenary power over any of Douglas's asserted issues. In August 2019, Douglas filed a Motion to Divide Undisclosed Property Relative to Final Decree of Divorce, a Motion to Enforce Final Decree of Divorce, and a Motion for Contempt of Court and Sanctions. In December 2019, the trial court

---

[1] Pro se litigants are held to the same procedural standards as attorneys to avoid giving them an unfair advantage over represented litigants. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). We will read pro se pleadings liberally to discern the substance of the complaints, *see Johnson v. McAdams*, 781 S.W.2d 451, 452 (Tex. App.— Houston [1st Dist.] 1989, no writ), but will not overlook a lack of supporting facts or a failure to meet procedural requirements, *see Cohn*, 573 S.W.2d at 184-85; *Johnson*, 781 S.W.2d at 452-53.

[2] Because the parties share the same last name, we refer to them by their first names.

signed orders denying Douglas's motion to divide and motion to enforce and several months later signed an order dismissing for want of prosecution the motion for contempt. Douglas then filed this appeal complaining of (1) the trial court's dismissal of his motion for contempt, (2) its refusal to clarify the divorce decree, and (3) the court's refusal to divide undisclosed property. We affirm the trial court's orders.

## PROCEDURAL & FACTUAL SUMMARY

Valerie filed a petition for divorce in March 2017. In her trial court filings, Valerie explained that her attorney had attempted to engage with Douglas in a collaborative divorce process but found no success and requested that Douglas be served with process in May 2017. Douglas was served on May 27 but did not file an answer or otherwise respond. On August 10, the trial court held a final hearing and signed a divorce decree, which recited that Douglas, although properly cited, did not appear. Valerie was awarded a house at 2806 Normand Drive in College Station; all possessions, household items, "appliances and equipment" in her possession or subject to her sole control; a 2009 Toyota Prius; the funds contained in three bank accounts; all sums related to financial plans "existing by reason of [Valerie's] past, present or future employment," including her veterinary clinic; all of Douglas's retirement benefits arising from his publishing company; retirement accounts and life insurance benefits in Valerie's name; one of Douglas's individual retirement accounts (IRA); and all of two investment accounts and half of a third. Douglas was awarded eleven parcels of real estate; household items, collectibles, appliances, equipment, clothing, and other possessions in his possession or subject to his sole control; funds contained in four bank accounts, including his publishing company's account; an IRA; three life insurance policies in his name and the names

2

of the couple's two children; all of one investment account and the other half of the investment account split with Valerie; eighteen vehicles, fourteen of which were listed as being inoperable; and his three businesses, including the publishing company. The decree confirmed that six other parcels of real estate, including Douglas's residence, were his separate property.

In March 2018, Douglas filed a motion to modify the decree, asserting that both he and the trial court had been misled by Valerie and her attorney; that Valerie had failed to disclose certain assets; and that the decree had improperly divided the parties' assets. Douglas sought the following modifications to the decree:

- that he be awarded the Normand house, which he claimed was his separate property because he bought it during the marriage with money he inherited from his parents;

- that Valerie be required to repay withdrawals from the three bank accounts she was awarded so that Douglas would receive half of the funds in those accounts;

- that Douglas be reimbursed for contributions he made to the investment account associated with Valerie's veterinary business;

- that Douglas be awarded the retirement account associated with his publishing company, the IRA in his name that was awarded to Valerie, and two of the three investment accounts awarded to Valerie, which Douglas asserted were a publishing company account and an account created to hold his inheritance proceeds;

- that the third investment account awarded to Valerie should be split evenly between the parties;

- that Valerie be required to account for and split with Douglas the airline miles accumulated by the spending of community property and that existed when the parties split or were divorced, whichever was greater; and

- that he should not be ordered to name Valerie as a life-insurance beneficiary because the policy had been bought for him by his parents.

Douglas sought further modification under the decree's undisclosed-assets provision—which states that such assets are "subject to future division"—asserting that Valerie's veterinary clinic "was not addressed" in the decree; that the clinic has about $100,000 in equipment bought with

3

community funds; that "[a]t one time, this equipment had a lease value of $1,500 per month, which was rolled into [Valerie's] paycheck"; and that Douglas was entitled to at least half of those assets or, "if it makes sense to give [Valerie] 100% of [Douglas's] retirement funds, then perhaps [Douglas] should be awarded 100% of the Veterinary business and its assets."

Valerie moved for summary judgment, arguing that the trial court lacked plenary power to modify the decree as requested by Douglas. *See* Tex. Fam. Code § 9.007 (after plenary power expires, trial court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment"). On July 12, 2018, the trial court granted summary judgment, ruling that "there is no issue over which this Court has plenary power and therefore subject matter jurisdiction" and awarding Valerie $1,500 in attorney's fees.

On August 7, 2019, Douglas filed three motions—a Motion to Divide Undisclosed Property Relative to Final Decree of Divorce, a Motion to Enforce Final Decree of Divorce, and a Motion for Contempt of Court and Sanctions. In his motion to divide, he sought half of the veterinary clinic's tangible assets; half of the clinic's earning potential, which he claimed to be $600,000; half of the couple's airline miles; and one hundred percent of whatever sum Valerie had received for the sale of the Normand house. In his motion to enforce, he asked for an accounting of the veterinary clinic's assets, complained of various awards to Valerie, and argued that the attorney's fees awarded to Valerie in the July 2018 summary judgment order violated the decree's provision that each party would bear their own legal costs. Finally, Douglas asserted in his motion for contempt that Valerie had committed perjury in various ways, such as misrepresenting the community-property nature of the Normand house, overvaluing various vehicles or mischaracterizing them as community property, exaggerating the value of a property awarded to Douglas, failing to report or undervaluing equipment and supplies owned by

4

the veterinary clinic, and improperly withdrawing money from the couple's accounts before the divorce in violation of Comal County's standing orders.

In December 2019, the trial court heard Douglas's motions related to the division of property, signing orders denying those motions in June 2020 and ordering Douglas to pay Valerie a total of $1,750 in attorney's fees. Because of time constraints, Douglas's motion for contempt was deferred to a later date and remained pending through October 2020, when Valerie filed a motion to dismiss, arguing that Douglas had not diligently prosecuted the issue and that the trial court lacked plenary power over any complaints related to the property division. Douglas responded that he had run out of time in the December 2019 hearing and had been unable to obtain a new in-person hearing for the contempt motion because of the pandemic. Douglas said that in Valerie's June 2020 virtual hearing on attorney's fees, although Douglas had "reminded" the trial court that "he hoped the COURT would defer judgment until all the evidence on all motions had been presented," the court instead ordered him to pay attorney's fees. Douglas also asserted that the trial court had stated that virtual hearings "take about three times as long as in-person hearings"; that, "[g]iven the number of evidentiary documents yet to be presented, an in-person hearing would respect the COURT's time and would facilitate justice"; and that the trial court "was unable to offer any guidance as to when such a setting would be available." He stated that "an in-person hearing is essential" and asked for such a hearing on his pending motion, but "only when it is medically safe to do so."

On November 19, 2020, the trial court held a hearing and signed an order dismissing Douglas's motion for contempt. The court also awarded Valerie attorney's fees. On appeal, Douglas presents three issues: (1) that the trial court erred in denying his motion to

5

divide undisclosed property; (2) that the trial court erred in failing to clarify and enforce the divorce decree; and (3) that the court erred in dismissing the case in November 2020.[3]

## STANDARD OF REVIEW & APPLICABLE LAW

The trial court has broad discretion in dividing a marital estate, and we presume the trial court properly exercised its discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Sheldon v. Sheldon*, No. 03-11-00803-CV, 2013 WL 6175586, at *3 (Tex. App.—Austin Nov. 22, 2013, no pet.) (mem. op.). "All property acquired during a marriage is presumed to be community property, and the burden is placed on the party claiming separate property to prove otherwise." *Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011). "A judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property." *Id.* at 363; *see Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003). However, "the court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree" and may enter a clarification order if a decree is ambiguous. *Pearson*, 332 S.W.3d at 363 (citing Tex. Fam. Code §§ 9.002, .008). In addition, a former spouse may file suit "to divide property not divided or awarded to a spouse in a final decree of divorce or annulment." Tex. Fam. Code § 9.201.

---

[3] Valerie asserts that because Douglas did not file his notice of appeal until December 2020, he cannot challenge the trial court's June 11, 2020 orders denying his motion to enforce and his motion to divide undisclosed property. However, Douglas asserts that the issues and the evidence relevant to all three motions overlapped at least to some degree. Moreover, the first two issues were interlocutory until they merged into the final order dismissing Douglas's motion for contempt. *See Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 387 (Tex. 2020); *In re T.J.L.*, 97 S.W.3d 257, 262 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We thus will consider the issues related to the interlocutory June 11 orders.

6

**DISCUSSION**

On appeal, Douglas argues that the trial court erred in (1) dismissing the case in November 2020, by which time the only remaining matter was Douglas's pending motion for contempt; (2) failing to clarify and enforce the divorce decree; and (3) failing to divide undisclosed property.

### 1. Complaints Related to the Original Decree

Douglas complains about actions by Valerie and her original attorney, asserting that he was misled into believing he did not need to respond to her petition for divorce; that Valerie committed perjury in her characterization of various assets; and that he was not given notice of the final hearing or of the decree after it was signed. None of those complaints can be considered in this appeal, however.

Valerie's petition was filed on March 22, 2017. At the final hearing, Valerie testified that she had "attempted to reach [her] husband regarding this matter," that she had "invited him to participate in a collaborative divorce," that he had not responded "in any way," and that he had not filed an answer despite having been served "on or about May 27th, 2017." In her affidavit attached to her motion for summary judgment, Valerie averred that she hired her first attorney "in the hopes of reaching an amicable divorce settlement" and that after she learned that her attorney "reached out to [Douglas] and that there was no agreement to continue with the formal collaborative law process, I requested for a formal divorce proceeding to be undertaken." In her motion, Valerie further explained that after her attorney's "attempts to utilize the collaborative law process" were unsuccessful, Douglas was personally served on May 27, with

7

the return of service being filed in the trial court on May 30.[4] He never answered or otherwise responded. Valerie asserted that on August 10, "with proper service, return of citation filed with ten days having elapsed and no answer," the final hearing was held, and the decree states that Douglas, "although duly and properly cited, did not appear." *See* Tex. R. Civ. P. 99(b), (c) (answer due on Monday "next following the expiration of twenty days" after service with citation and petition), 107(h) (default judgment may not be granted until proof of service has been on file for at least ten days), 239 (if return of service has been on file for time required by rule 107, plaintiff may take default judgment against defendant who has not filed answer).

The record establishes that Douglas was served and failed to answer, and although he asserts that he was misled into not answering, the record and the procedural context of this appeal do not support that contention or excuse his default. Instead, the record indicates that after Douglas failed to cooperate in the collaborative divorce process, Valerie moved forward

---

[4] Douglas asserts that Valerie's first attorney lied to him about the divorce process, leading Douglas to believe he did not have to file an answer, pointing to a recording he made of the first—and apparently only—conversation between him and the attorney, which occurred on March 16, 2017. We have listened to the recorded call, which Douglas filed with the trial court attached to his motion to modify, but do not find the "con" or "lies" that Douglas alleges. In the call, the attorney explained that Valerie wanted a divorce and hoped to use the collaborative divorce process, which requires that both parties sign a collaborative family law participation agreement and be represented by collaborative family law lawyers. Tex. Fam. Code § 15.052(4); *see id*. § 15.102(a) (process cannot begin until parties sign collaborative family law participation agreement). The attorney explained that collaborative divorce is "an alternative to just the classic [divorce] lawsuit" in which the parties "talk about goals and interests," work through the divorce process "with the understanding that you're going to reach an agreement," and treat each other with dignity, respect, and candor. The attorney said he would be filing Valerie's petition soon and would keep Douglas informed. He also said he could not give "any sort of advice or direction," but recommended that Douglas research the process to "see if you think it would be a good fit" and find an attorney to assist him. *See id*. § 15.052(4). At one point, the attorney asked if the collaborative process "sound[ed] alright," and Douglas said, "You can go ahead and speak but I'm not saying anything." At other points, Douglas responded to questions by saying only, "Sounds good," or, "I'm listening." He did not engage in the conversation, ask any questions, or provide any input. Although Douglas asserts that the attorney misled him into thinking he did not need to respond to Valerie's petition, the recording does not support that claim.

8

with the traditional process, and Douglas failed to answer. Because he never answered, he was not entitled to notice of the final hearing, *see Continental Carbon Co. v. Sea-Land Serv., Inc.*, 27 S.W.3d 184, 188 (Tex. App.—Dallas 2000, pet. denied) ("[A]fter a defendant is served with the citation and petition, the plaintiff has no legal duty to notify the defendant before taking a default judgment on the causes of action asserted in the served petition."); *Seacoast, Inc. v. LaCouture*, No. 03-96-00506-CV, 1998 WL 29966, at *4 (Tex. App.—Austin Jan. 29, 1998, pet. denied) (not designated for publication) ("Texas law does not require that plaintiffs send notice of a hearing on a motion for default judgment to defendants who receive service but fail to answer."), and the trial court therefore did not err in signing the default divorce decree.

Moreover, even if Douglas was not timely mailed a copy of the final judgment, his trial court filings establish that although he learned about the divorce in mid-September 2017, he did not seek an extension of post-judgment deadlines that could have allowed him to bring a direct appeal from the decree. *See* Tex. R. Civ. P. 306a(4), (5) (providing process for establishing that party did not learn of judgment until more than twenty days after judgment was signed). Instead, he waited more than five months to file his motion to modify, which was disposed of by summary judgment in July 2018, and then waited another year—until August 2019, two years after the decree was signed—to file the three motions that are at issue in this appeal. We thus will not consider Douglas's complaints related to the original decree and will abide by its characterization of the parties' various assets. *See Pearson*, 332 S.W.3d at 363 (final decree dividing marital estate "bars relitigation of the property division," even if property is incorrectly characterized or divided).

9

## 2. *Denial of Motion to Divide Undisclosed Assets*

Douglas contends that the value of Valerie's veterinary clinic was not divided by the decree and that the trial court erred in denying his motion to divide undisclosed assets.

When a former spouse files suit to divide property not divided or awarded in a final decree, he "has the burden to prove that the divorce court did not consider or dispose of" the property in question in its final decree. *Brown v. Brown*, 236 S.W.3d 343, 349 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Fleming v. Fleming*, No. 01-11-00635-CV, 2012 WL 6754994, at *4 (Tex. App.—Houston [1st Dist.] Dec. 28, 2012, no pet.) (mem. op.). When, as here, a former spouse challenges the trial court's refusal to make such a division, as the party attacking an adverse finding on an issue on which he had the burden of proof at trial, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Fleming*, 2012 WL 6754994, at *5. In reviewing such a challenge, we first examine the record for evidence that supports the finding, ignoring all evidence to the contrary, and if there is no evidence supporting the finding, we then examine the entire record to determine if the contrary position is established as a matter of law, bearing in mind that the trial court as fact finder is the sole judge of witness credibility and the weight to give their testimony. *Fleming*, 2012 WL 6754994, at *5 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Francis*, 46 S.W.3d at 241). Unless the contrary proposition is conclusively established, we will overrule the challenge. *Francis*, 46 S.W.3d at 241; *Fleming*, 2012 WL 6754994, at *5. In our consideration, we should bear in mind that a trial court "may consider and divide an asset without specifically referring to the particular asset in the decree" and that a "decree's language can be broad enough to show that the court considered and divided the asset without naming it."

*Irick v. Lineberry*, No. 01-20-00232-CV, 2021 WL 5829096, at \*6 (Tex. App.—Houston [1st Dist.] Dec. 9, 2021, pet. filed) (mem. op.) (citing *Wilde v. Murchie*, 949 S.W.2d 331, 333 (Tex. 1997)).

Valerie's veterinary clinic is a sole proprietorship, which "does not have a separate legal existence distinct from the operator of the business." *Bush v. Bush*, 336 S.W.3d 722, 740 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 952 (Tex. 1983) ("[A] sole proprietorship has a legal existence only in the identity of the sole proprietor."). Thus, "[t]he assets and liabilities of the sole proprietorship belong to the operator directly." *Bush*, 336 S.W.3d at 740. In the final hearing, Valerie testified that she is a veterinarian, and her practice was noted in relation to equipment that she agreed should be awarded to Douglas. She testified that she had "a large volume of veterinarian equipment at the property," which she estimated was worth approximately $11,000, and said she was "fine to leave that in Doug's possession and award that to Doug."

At the hearing on Douglas's motion to divide undisclosed assets, the parties discussed whether the practice had been considered in the final hearing and included in the original decree. Douglas noted that the "decree is very clear awarding" him his three companies and asked, "Why does it address that but it doesn't address Falling Rock Veterinary Clinic?" Valerie responded that her practice is a sole proprietorship and asserted, "Because this business entity is a sole proprietorship, then that property is by virtue the property of the—of the person who is the sole proprietor, which would have been [Valerie]." Therefore, she argued, the veterinary clinic, which had no real property associated with it and "is just equipment," fell within the provision awarding her all equipment in her possession. Douglas again noted that the decree was specific about his companies but not about Valerie's, and the trial court stated:

11

I understand. And the—again, it's just—it's a matter of perspective. They drafted it with their understanding of what they had in their possession—they being petitioner, what they understood, not knowing what the respondent, being you, that were not present—and reasons why are not at issue here today, but it is understandable that they would try to be more particular about someone who is not here so that they're trying to define what not—what might not be globally understood.

The court then stated that Douglas could put on evidence about the clinic's value, saying that even if it agreed that the clinic was not included in the decree, "I need to have proof." Douglas responded that he was not prepared to prove "that business existed, what was involved, what activity went into it." The court said that it was not concerned about "the existence of the business" but that it needed proof about "the value of some undisclosed property associated with that business." Douglas stated that he estimated the clinic's "blue sky value"—which he defined as the clinic's "earning potential"—at $600,000, explaining that he arrived at that sum by using "an income of $60,000 per year over a ten-year period." Valerie objected that "simply saying $60,000 over ten years is speculative at best," and when the trial court asked if Douglas could produce evidence about the clinic, Douglas responded that Valerie knew about the business and its contracts but that he only knew some information about past contracts and did not know if the clinic still had those contracts; that "in the future if we want to do this again," he could "line up some witnesses"; that he did not "have any financial records because the financial records went with" Valerie; and that he was "not prepared to do that today." The trial court then said that it was trying to be "as even-handed as I can" but that "this is our hearing today."

We cannot conclude that the trial court erred in denying Douglas's motion to divide undisclosed assets as to the clinic. First, we cannot conclude that the clinic, as a sole proprietorship consisting of equipment and not real property, was undisclosed and not included

12

in the decree's provision awarding Valerie all equipment and other items in her possession. *See Irick*, 2021 WL 5829096, at \*6; *Fleming*, 2012 WL 6754994, at \*5; *Brown*, 236 S.W.3d at 349. Second, "when a party does not provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide property." *Sheldon*, 2013 WL 6175586, at \*6 (quoting *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.)). Douglas produced no evidence about the clinic's value other than his own speculation about its "blue sky value" and thus, even if the clinic was not included in the decree, he cannot complain of failure to divide the value of the clinic. *See id*.

Douglas also raised undivided-assets arguments related to the Normand house, again asserting that it should have been considered his separate property because it was bought with funds from his inheritance and then arguing that Valerie had undervalued the house in her filings and that he should be awarded some portion of a $162,000 value increase that he claimed he had "created" when he tried to sell the house in early March 2017. As Valerie noted in the hearing, however, the Normand house was not an undisclosed asset and she was awarded the property as a whole, as opposed to some specific dollar value to be obtained from the sale of the property. The characterization and value of the Normand house, which was awarded to Valerie in the decree, was not an issue that could properly have been addressed through a motion to divide undisclosed property. *See Irick*, 2021 WL 5829096, at \*7 (challenge to asset's erroneous characterization must be brought through direct appeal). We overrule Douglas's complaints related to the trial court's denial of his motion to divide undisclosed property.

13

*3. Denial of Motion to Clarify and Enforce*

We next consider Douglas's complaints related to the trial court's denial of his motion to clarify and enforce the decree. In the hearing on his motions, Douglas argued that the decree should be enforced or clarified to award him some portion of Valerie's retirement account because he made "substantial contributions to this plan" and the funds were not all "due to [Valerie's] employment." Therefore, he asked the court to order an accounting of his contributions to Valerie's retirement account and to award him some portion of those funds. The trial court denied that request, agreeing with Valerie that Douglas sought a modification, not enforcement or a clarification. We agree with the trial court that the changes sought by Douglas would amount to a reallocation of assets, not a simple clarification.

Douglas next argued that the decree is internally inconsistent and should be clarified because it awarded him his publishing company, including "all" equipment, cash, receivables, and personal property used in connection with its operation, but also awarded Valerie Douglas's "retirement benefits in the Fiduciary Trust CO HD Cust Exclusive K Morton Falls Publishing Company FBO" Douglas. He argued that the decree cannot both award him "all" of the monies held by the publishing company and also award Valerie the retirement account. Therefore, he contended, the court should have "clarified" the decree to award him the retirement account. Again, the trial court disagreed, noting that the award to Valerie preceded the award to Douglas, meaning that the retirement account was awarded to Valerie, and that Douglas was awarded "what's left."

Clarification orders "cannot be used to make a substantive change in a divorce decree after it becomes final," and a trial court "may not change the decree's division of property even if it contains substantive legal error." *Brown*, 236 S.W.3d at 347. Thus, even if Douglas

14

was right that the decree contains an internal conflict in awarding him "all" of the publishing company assets while awarding Valerie the associated retirement account, Douglas's motion sought not a clarification but instead sought to change the property division, an act the trial court lacked authority to do. *See* Tex. Fam. Code § 9.007(a) (after its plenary power has expired, trial court may not modify, alter, or change property division); *Dalton v. Dalton*, 551 S.W.3d 126, 140 (Tex. 2018) (divorce decree awarded husband and wife half interests in husband's retirement accounts, which was effectuated through unchallenged qualified domestic relations order (QDRO), but wife later obtained additional QDRO assigning wife additional interests in retirement accounts; supreme court invalidated new QDRO because it "created a new division to enforce Bart's spousal-support obligation" and thus violated family code); *Everett v. Everett*, 421 S.W.3d 918, 921 (Tex. App.—El Paso 2014, no pet.) (although trial court believed that decree intended to give wife additional financial assistance for three years, "whether in the form of property tax payments or additional spousal maintenance and that its order clarified this intent," "converting debt into spousal maintenance is not merely a clarification, it is a change in the substantive division of property and cannot be enforced under the statute"). We overrule Douglas's complaints related to the trial court's denial of his motion to enforce or clarify.

### 4. *Dismissal of Motion for Sanctions*

Finally, we consider whether the trial court erred in dismissing Douglas's motion for sanctions, a decision we review for an abuse of discretion. *See In re Conner*, 458 S.W.3d 532, 534 (Tex. 2015) (orig. proceeding); *Harrison v. Employees Ret. Sys.*, No. 03-09-00259-CV, 2010 WL 2629893, at *1 (Tex. App.—Austin July 1, 2010, no pet.) (mem. op.).

15

Valerie sought the dismissal of Douglas's motion for contempt on two grounds, arguing (1) that the trial court lacked plenary power to modify the decree and that Douglas's motion "is requesting modification, just dressed up as contempt"; and (2) that Douglas had not diligently prosecuted his motion, allowing it to remain pending since the December 2019 hearing without making any attempts to set it for resolution. The trial court started the hearing on Valerie's motion to dismiss by stating its "inclination" was to dismiss because it thought that the court lacked jurisdiction and that there was no plenary power "to do anything in this case." Douglas responded that his motion for contempt was "related to" the motions to modify and to divide and that the court had started to hear the motion for contempt in December 2019, when they ran out of time and then were interrupted by the pandemic. Valerie responded that despite the titles of the motion to divide and the motion to clarify, "the content of the motion was a motion to modify." She explained that the trial court had denied those two motions and granted Valerie attorney's fees, which Douglas had since paid, and then argued that "this motion for contempt is a piggyback on those two motions saying the Court should hold her in contempt for violations alleged within those two motions," which had been denied. She argued that Douglas was asking the trial court "to modify the terms of the divorce decree. And now he's asking this Court for sanctions against things the Court has already denied." The trial court stated that it did not "think this Court has plenary power to do anything in" Douglas's motion for contempt and then signed an order granting Valerie's motion to dismiss.

Douglas sought to have Valerie held in contempt for what he alleged were falsehoods made to the trial court in the original divorce proceeding. He alleged that Valerie committed perjury and made misrepresentations related to the Normand house and the origin of the funds used to buy it; that she overvalued some of the vehicles awarded to him and

16

mischaracterized some of the others, which, he argued, should have been considered the parties' separate property but instead were labeled as community property and awarded to—or, as Douglas phrased it, charged against—Douglas; that she provided inaccurate information about the providence of some of the bank accounts and his life insurance policy, labeling them as community property instead of as Douglas's separate property; that she overstated the value of a piece of property awarded to Douglas as his separate property; that she falsely claimed two of his books were community property; that she failed to report veterinary equipment or supplies and misstated the value of other equipment; and that she violated standing orders by withdrawing money from some of the bank accounts.

All of Douglas's arguments in his motion to contempt relate to his arguments about the characterization and division of the couple's assets. Those issues, as we have noted earlier, are no longer up for dispute. *See Pearson*, 332 S.W.3d at 363-64; *Shanks*, 110 S.W.3d at 449; *Baxter v. Ruddle*, 794 S.W.2d 761, 762-63 (Tex. 1990). Thus, the trial court correctly determined that it lacked the plenary power to consider Douglas's issues, all of which had to have been raised in a direct appeal from the original decree and can no longer be relitigated. The trial court therefore did not abuse its discretion in granting Valerie's motion to dismiss Douglas's motion for contempt and sanctions. Because the court did not abuse its discretion in granting the motion on grounds of a lack of plenary power, we need not consider whether Douglas failed to prosecute his motion. *See Garza v. Garcia*, 137 S.W.3d 36, 37 (Tex. 2004) (appellate courts generally must affirm general trial-court orders if any ground asserted in motion is meritorious); *Walker v. Gonzales Cnty. Sheriff's Dep't*, 35 S.W.3d 157, 162 (Tex. App.—Corpus Christi-Edinburg 2000, pet. denied) ("An order granting a dispositive motion that does not specify the

17

grounds for dismissal will be affirmed if any of the theories advanced in the motion supports dismissal."). We overrule Douglas's issues related to the dismissal of his motion for contempt.

## CONCLUSION

Having overruled Douglas's issues on appeal, we affirm the trial court's orders denying or dismissing his motions to enforce, to divide, and for contempt.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed:  May 20, 2022