

## NUMBER 13-25-00130-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

### IN THE INTEREST OF B.S. AND A.S., CHILDREN

---

### ON APPEAL FROM THE COUNTY COURT AT LAW
### OF KLEBERG COUNTY, TEXAS

---

## OPINION

### Before Justices Silva, Peña, and Fonseca
### Opinion by Justice Fonseca

This is an appeal of an order modifying the parent-child relationship following a divorce decree. Appellant Crystal Solomon raises four issues challenging the trial court's decision to transfer "sole and exclusive control" of the parties' education savings accounts to appellee Dusty Ray Solomon. We affirm in part and reverse and render in part.

### I.    BACKGROUND

Crystal and Dusty were married and had two children, B.S. and A.S., born in 2007 and 2009 respectively. They were divorced in 2020. The agreed divorce decree provided

in part that both parties shall be joint managing conservators of the children, that Crystal shall have the exclusive right to designate the children's residence within Kleberg County or Kenedy County, that Dusty shall have visitation as mutually agreed to by the parties, and that Dusty shall pay $1,688 in monthly child support. The decree also stated in relevant part:

*Conservatorship*

. . . .

IT IS ORDERED that the following custodial accounts now held by the parties for the parties' children are placed under the sole and exclusive control of [Crystal]: 529 Account numbers ending in 4354 and 4351. [Dusty] is ORDERED to execute, have acknowledged, and deliver to [Crystal] all documents necessary to effectuate [Crystal]'s sole and exclusive control of the accounts on or before the 60th day after this Final Decree of Divorce is rendered.

. . . .

*Division of Marital Estate*

. . . .

IT IS ORDERED AND DECREED that [Crystal] is awarded the following as her sole and separate property, and [Dusty] is divested of all right, title, interest, and claim in and to that property:

. . . .

P-10.  All brokerage accounts, stocks, bonds, mutual funds, and securities registered in [Crystal]'s name, together with all dividends, splits, and other rights and privileges in connection with them.

Finally, the decree directed the parties to sell their residence in Riviera, and it directed the proceeds from the sale to be distributed as follows:

1.  Crystal will receive first $220,000 [as her separate property]; then

2.  Each party shall receive one-half of the remaining net sales proceeds; and from the net sales proceeds received by [Dusty], $25,000.00 will be placed into an account for [B.S.], with [Crystal] serving as trustee of the funds and $25,000.00 will be placed into an

2

account for [A.S.] with [Crystal] serving as trustee of the funds.

In June of 2023, Dusty filed a petition to modify the parent-child relationship requesting that he be granted the exclusive right to designate the children's primary residence. The petition stated that the children were over twelve years old and would advise the court in chambers as to which parent they prefer to have that exclusive right. *See* TEX. FAM. CODE § 153.009(a). In August, Crystal filed a counterpetition alleging that Dusty "has voluntarily stopped working at the job he was working [at] during the divorce and has received substantial gifts and inheritance," and that "the current possession schedule is no longer workable nor in the children's best interest." She requested a standard visitation order and an increase in the monthly child support amount. Dusty later filed an amended petition for modification.

On February 13, 2024, the trial court signed temporary orders providing (1) that "[e]ach party shall have alternating weekly visitation beginning Thursday at 6:00 p.m. and ending on the following Thursday at 6:00 p.m." and (2) that Crystal shall pay $1,200 in monthly child support to Dusty during the pendency of the case.[1]

On August 2, 2024, Dusty filed a "Petition for Clarification of Final Decree of Divorce" asserting that the property division terms set forth above "may not be specific enough to be enforceable." Dusty alleged that Crystal "has taken the position that all of the monies in all of the 529 Accounts and Custodial Accounts for the children are hers to spend as she sees fit." He therefore sought an order clarifying "[t]hat all expenditures from the 529 Accounts and the Custodial Accounts be used solely for the children's education,"

---

[1] The order noted that Crystal's monthly net resources were about three times the size of Dusty's. *See* TEX. FAM. CODE § 154.130(a).

3

including "college tuition, room and board, books, [and] living expenses at the beginning of each semester." Subsequently, Dusty filed a second amended petition to modify the parent-child relationship, which added the following allegation and request:

> The following changes in the status of the children's property have occurred since the prior order was rendered: Each child has money that they have earned from work and livestock shows which have been put [in] both the 529 Accounts and Custodial Accounts that have not been accounted for. The children have earned this money and have paid Federal Income Taxes on this money earned as well. Any and all financial accounts which are intended for the children['s] education should be jointly held with equal access by both parties. The Court should establish explicitly rules on how and when the monies are t[o] be spent.

At the beginning of a hearing on September 17, 2024, the parties announced that they had reached an agreement under which Dusty would be granted the exclusive right to designate the children's primary residence and Crystal would be obligated to pay guidelines child support. The parties continued to disagree on certain matters, however, including whether the decree required clarification, and how much each party would be responsible for expenses related to the children's extracurricular activities.

Dusty testified that the "529 accounts" were set up during the marriage to be used for "the kids' further education," including college. *See* 26 U.S.C. § 529 (providing for tax-favored treatment of certain "qualified tuition programs"). He said that the decree made Crystal the "sole custodian" of the 529 accounts because she is an accountant by trade; however, he said Crystal is now "claiming that's her money." He explained that there were also two "custodial accounts" with a brokerage firm, Ameriprise, which the parties set up after the divorce using the home sale proceeds, as required by the decree.

Crystal testified that the 529 accounts were set up in Utah to fund the children's "secondary education," and, at the time of the divorce, B.S.'s 529 account had $44,000 and A.S.'s 529 account had $25,000. She said that, since the divorce, she contributed

4

$77,174.95 in her separate income to those accounts. Crystal explained that the benefit of a 529 account is that its "earnings are not subject to tax when you withdraw." However, if funds are withdrawn "for a purpose other than the benefit of the kids," "there's a 10 percent tax on the interest, just like a 401(k) would have." She agreed that Dusty contributed $25,000 to each of the two Ameriprise accounts, funded with his share of the home sale proceeds, as required by the decree. Crystal said that she also contributed the same amounts to those accounts.

According to Crystal, since the divorce, B.S. earned $15,110.42 and A.S. earned $10,702.85 from "livestock shows" and the sales of livestock. She said that $9,846.15 of B.S.'s earnings were deposited in his Ameriprise account; but the remainder of B.S.'s earnings, and all of A.S.'s earnings, were deposited in the 529 accounts. Crystal stated she is "willing to give Dusty control" of the children's post-divorce earnings, but is "not willing" to give him control of the 529 accounts in their entirety. She agreed that the 529 accounts were intended for "educational expenses" but, when asked on cross-examination whether the funds would be used to pay for the children's room and board and books, she repeatedly said she was "not sure." She denied that, in order to have access to the money, the children would need to rent one of the apartments that she owns. When asked what would happen to any "money left over" in these accounts, she replied that she did not know.

After Crystal's attorney concluded his questioning, the trial court expressed its opinion that the 529 accounts are "fiduciary account[s] for the children" and that Crystal "is just trustee" and "not owner of the funds." At the end of the hearing, the court stated it intended to research whether, in light of the parties' agreement for Dusty to determine the

5

children's primary residence, Dusty should also be named the trustee for the 529 accounts.

On December 17, 2024, the trial court signed a judgment effectuating the parties' agreement as to custody and child support, granting Dusty "sole and exclusive control" of the 529 accounts, and stating that "all funds are to be used solely for the benefit of the child whose name is on the account." Later, the trial court entered findings of fact and conclusions of law, including the following:

> 7. [Crystal], [Dusty], [A.S.,] and [B.S.] agreed to set up accounts for the needs and education of the children in their future. This agreement was made during the marriage. The monies contained in the My 529 account number [*****]4354 would be to fund [B.S.]'s educational cost in the future. The parties and children agreed that the 529 account number [*****]4351 was to be used to fund [A.S.]'s educational cost in the future.
>
> 8. The Divorce Decree did not award ownership of My 529 account number [*****]4354 and My 529 account number [*****]4351 to either party.
>
> . . . .
>
> 10. The provision allowing [Crystal] to manage the accounts [is] located on page 9 [of the decree] under the heading "Conservatorship."
>
> . . . .
>
> It is the order of the court that modifying custody and financial orders is in the best interest of the children. The court determined that a change of custody is warranted due to a material and substantial change in circumstances, therefore modifying financial arrangements to ensure the child's needs are in the best interest [sic].
>
> The Court finds the person who has the right to determine the residence of the children is granted the right to receive and manage child support payments and to manage educational needs such as those in a 529 account.

Crystal filed a motion for new trial, which the trial court denied, and this appeal followed.

## II. TRIAL COURT JURISDICTION

## A. Applicable Law

In a post-divorce proceeding, a trial court "may render further orders to enforce the division of property made or approved in the decree of divorce or annulment to assist in the implementation of or to clarify the prior order." TEX. FAM. CODE § 9.006(a). In particular, "[t]he court may specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed." *Id.* § 9.006(b). Moreover, "[o]n a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property." *Id.* § 9.008(b). However,

> [a] court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

TEX. FAM. CODE § 9.007(a). In other words, an order "that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable." *Id.* § 9.007(b).

"Whether a trial court's order constitutes improper modification under [§] 9.007 or permissible enforcement of the decree turns on the text of the decree and the scope of the relief afforded in the name of enforcement." *Morrison v. Morrison*, No. 24-0053, 2026 WL 247877, at *4 (Tex. Jan. 30, 2026); *see Dalton v. Dalton*, 551 S.W.3d 126, 142 (Tex. 2018) (holding post-divorce order void where it "assigned to [appellee] additional interests in . . . retirement accounts that had not previously been divided" and "created a new

7

division to enforce [appellant's] spousal-support obligation").

## B. Analysis

Crystal argues by her first issue that the trial court lacked jurisdiction to alter the identity of the party with "sole and exclusive control" over the 529 accounts. She contends that this ruling was, in effect, an impermissible modification of the just-and-right division of community property which had already been finally established in the agreed divorce decree.[2] We agree.

Pursuant to § 9.007, "[a] judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property." *S.C. v. M.B.*, 650 S.W.3d 428, 441 (Tex. 2022) (quoting *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011)). Section 9.007 is jurisdictional and any order violating its restrictions is void. *Morrison*, 2026 WL 247877, at *3 (first citing *Pearson*, 332 S.W.3d at 363; and then citing *Dalton*, 551 S.W.3d at 142).

Dusty argues that the trial court had jurisdiction to render the subject orders by virtue of its statutory powers to enforce and clarify the divorce decree. *See* TEX. FAM. CODE §§ 9.006, .008. He further contends that the decree did not in fact award "ownership" of the 529 accounts to Crystal and, therefore, to the extent the accounts are community property, the trial court had jurisdiction to divide them in the instant modification proceeding. *See id.* § 9.201(c) ("Notwithstanding any other provision of this chapter, the court that rendered a final decree of divorce or annulment or another final

---

[2] Crystal also contests this provision on grounds that the trial court erred by applying the best interest standard (Issue 2), that it erred by divesting her of her post-divorce earnings (Issue 3), and that the provision was not supported by Dusty's pleadings or tried by consent (Issue 4). By an additional issue, Crystal asserts that the cause must be reversed or remanded because significant portions of the reporter's record are missing through no fault of her own. *See* TEX. R. APP. P. 34.6(f).

order dividing property under this title retains continuing, exclusive jurisdiction to render an order under this subchapter to divide property not divided or awarded to a spouse in the final decree."). Dusty observes that the provision granting Crystal "sole and exclusive control" over the 529 accounts appears in a section of the decree entitled "Conservatorship," not in its section concerning the division of community property. He further notes that this provision does not explicitly state that Crystal is "awarded" the property or that Dusty is "divested" of it, as the decree's other property division terms stated.

Finally, Dusty asserts that Paragraph P-10 of the decree's property division section also did not award "ownership" of the 529 accounts to Crystal because the more "specific" provision in the "Conservatorship" section controls. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) ("[A] specific contract provision controls over a general one."); *see also Harvey v. Harvey*, 905 S.W.2d 760, 764 (Tex. App.—Austin 1995, no writ) ("[W]hen a divorce decree is a consent decree or agreed judgment, it must be interpreted as if it were a contract between the parties, and the interpretation thereof is governed by the laws relating to contracts.").

Dusty's position is untenable. It is undisputed that, at the time of the decree, the 529 accounts were composed entirely of funds earned by the parties during the marriage. Therefore, the accounts consisted of community property subject to a just-and-right division. *See* TEX. FAM. CODE §§ 3.002 ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."), 3.003(a) ("Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."); *Pearson*, 332 S.W.3d at 364 ("All property acquired during

9

a marriage is presumed to be community property, and the burden is placed on the party claiming separate property to prove otherwise."); *Zorilla v. Wahid*, 83 S.W.3d 247, 251 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (noting "[t]he children's education account would have been community property had it been acquired while [appellant] was domiciled in Texas"), *disapproved of on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011). If the provision in the "Conservatorship" section of the decree did not award "ownership" of the accounts to Crystal, as Dusty claims, then there was nothing in it which would conflict with Paragraph P-10, which explicitly and unambiguously "awarded" to Crystal "[a]ll brokerage accounts, stocks, bonds, mutual funds, and securities registered in [her] name" as her "sole and separate property" and divested Dusty "of all right, title, interest, and claim in and to that property." Dusty does not dispute that, though the accounts were intended to be used for the children's education, they were assets of the type described in Paragraph P-10,[3] they were opened by Crystal, and they were registered in Crystal's name. We conclude that the divorce decree awarded the 529 accounts to Crystal as part of the just-and-right division of the marital estate. The trial court's finding to the contrary was error.[4]

It is important to note that, although both parties agreed that the 529 accounts

---

[3] Under the Texas Securities Act, a "security" is defined to include an "investment contract." TEX. GOV'T CODE § 4000.068(a)(1)(O); *see Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 667 (Tex. 2015) (holding "an 'investment contract' for purposes of the Texas Securities Act means (1) a contract, transaction, or scheme through which a person pays money (2) to participate in a common venture or enterprise (3) with the expectation of receiving profits, (4) under circumstances in which the failure or success of the enterprise, and thus the person's realization of the expected profits, is at least predominately due to the entrepreneurial or managerial, rather than merely ministerial or clerical, efforts of others, regardless of whether those efforts are made before or after the transaction."). The 529 accounts in this case appear to meet that definition. *See* TEX. EDUC. CODE ch. 54.

[4] The trial court also erred to the extent it concluded that "the person who has the right to determine the residence of the children" must also be "granted the right to . . . manage educational needs such as those in a 529 account." Dusty does not direct us to any authority, and we find none, supporting this proposition of law.

were intended to pay for the children's education expenses, there was never any legal impediment restricting them from using the funds in those accounts to pay non-education expenses. A 529 account is not an irrevocable trust, the corpus of which may be considered property of the beneficiary, and the income of which may be excluded from community property under certain circumstances. *Cf. Sharma v. Routh*, 302 S.W.3d 355, 364 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[W]hen a spouse receives distributions of trust income under an irrevocable trust during marriage, the income distributions are community property only if the recipient has a present possessory right to part of the corpus."); *Ridgell v. Ridgell*, 960 S.W.2d 144, 147 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.) ("The beneficiaries of a valid trust become the owners of the equitable or beneficial title to the trust property and are considered the real owners."). Further, a 529 account is not considered an irrevocable gift or transfer to the beneficiary, as would be the case for an account established under the Uniform Gifts to Minors Act (UGMA). *See* UTAH CODE § 75A-8-105 ("A person may make a transfer by irrevocable gift to, or the irrevocable exercise of a power of appointment in favor of, a custodian for the benefit of a minor under [§] 75A-8-110."); *id.* § 75-A-8-110 (providing detailed requirements for "creating custodial property and effecting transfer" under the UGMA, none of which were satisfied here).

Instead, as Crystal indicated in her testimony, a 529 account is merely a savings account which remains owned by the person opening the account but is given favorable tax treatment under the Internal Revenue Code so long as withdrawn funds are used for certain "qualified higher education expenses." *See* 26 U.S.C. § 529(c)(3)(B); UTAH CODE § 53H-10-208(a) ("The account owner retains ownership of funds in the account until:

(i) funds are used to pay higher education costs for the beneficiary; (ii) funds are otherwise disbursed; (iii) funds are transferred for administrative costs; or (iv) the account is closed.").[5] If withdrawals are not used on such expenses, a ten percent penalty is assessed, and any interest generated by the account is taxable to the recipient. *See* 26 U.S.C. § 529(c)(3)(A), (c)(6). Crucially, as the sole account "owner" and the party vested by the decree with the "sole and exclusive" right to control the accounts, Crystal has the discretion to elect to spend the funds (and pay any resultant taxes and penalties) as she sees fit. *See* UTAH CODE § 53H-10-207 ("(1) Any account owner may cancel an account agreement at will. (2) If an account agreement is cancelled by the account owner, the current account balance shall be disbursed to the account owner less: (a) an administrative refund fee . . . ; and (b) any penalty or tax required to be withheld by the Internal Revenue Code."); *id.* § 53H-10-208(a).[6]

The court was without jurisdiction to modify this arrangement in the modification proceeding.[7] *See* TEX. FAM. CODE § 9.007(a). To the extent Dusty disapproves of the arrangement, he forfeited any complaint by agreeing to the decree and failing to appeal it.

---

[5] Texas has a similar statute. *See* TEX. EDUC. CODE §§ 54.707(a) ("An individual may open a savings trust account to save money for the payment of the qualified higher education expenses of a beneficiary. The individual who opens the account is the owner of the account.").

[6] *See id.* §§ 54.708(b) ("An account owner may withdraw all or part of the balance of an account on prior notice as authorized by [Prepaid Higher Education Tuition Board] rules."), 54.710 ("Nothing in this subchapter or in any savings trust agreement entered into under this subchapter may be construed to . . . give a beneficiary any rights or legal interest with respect to a savings trust account unless the beneficiary is the account owner.").

[7] Dusty cites no authority, and we find none, indicating that a trial court may alter a previously-rendered property division order if it finds a "material and substantial change in circumstances" or that the alteration is in the children's best interests. We note that, like the 2020 decree, the judgment on appeal names both parties joint managing conservators of the children, grants both of them "the independent right to make decisions concerning the children's education," and requires both of them to ensure the children's attendance at Riviera Independent School District.

12

**C.    Summary**

The judgment on appeal grants Dusty "sole and exclusive control" of the 529 accounts. This amounts to more than mere enforcement, clarification, or assistance in implementation of the divorce decree. *See id.* §§ 9.006, .008. Instead, for the reasons discussed above, this was a material change to the decree's substantive division of property. *See id.* § 9.007(a). Accordingly, the trial court exceeded its jurisdiction by making this ruling in the modification proceeding. *See id.*; *Morrison*, 2026 WL 247877, at *3; *Pearson*, 332 S.W.3d at 364.

The judgment also states that "all funds are to be used solely for the benefit of the child whose name is on the account." Importantly, no such language was included in the divorce decree. Because this provision imposes restrictions on the use of distributed community property which were not included in the decree, it also constitutes a material change in the substantive division of community property and is void. *See* TEX. FAM. CODE § 9.007(a); *Morrison*, 2026 WL 247877, at *3; *Pearson*, 332 S.W.3d at 364.

We sustain Crystal's first issue and reverse these provisions of the trial court's judgment. In light of our conclusion, we need not address her remaining issues. *See* TEX. R. APP. P. 47.1.

### III.    CONCLUSION

The portions of the judgment awarding Dusty "sole and exclusive control" of the 529 accounts and stating that "all funds are to be used solely for the benefit of the child whose name is on the account" are reversed, and we render judgment denying Dusty's

13

requests for such relief. The remainder of the judgment is affirmed.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
5th day of March, 2026.