Opinion filed March 5, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00174-CV

_____

## GRIFFIN ENERGY LAW, PLLC, Appellant

## V.

## ROBERT D. BILLINGSLEY; FREEDA BILLINGSLEY; AND JAMES M. DAVIS, JR., Appellees

**On Appeal from the 118th District Court**

**Martin County, Texas**

**Trial Court Cause No. 8004**

# O P I N I O N

This title dispute involves the ownership of certain mineral interests located in Martin County. The controversy originated when Appellant, Griffin Energy Law, PLLC (GEL), filed suit to quiet title against Appellees, Robert D. Billingsley, Freeda Billingsley, and James M. Davis, Jr. (the Billingsley parties). On cross-motions for

summary judgment, the trial court granted the Billingsley parties' motion, denied GEL's motion, and entered a final judgment in favor of the Billingsley parties.

GEL contends on appeal that the trial court: (1) erred when it denied GEL's motion for summary judgment because (a) the undisputed summary judgment evidence conclusively establishes the community property presumption, and (b) the Billingsley parties failed to produce any competent tracing evidence to support their separate property claims; (2) erred when it granted the Billingsley parties' motion for summary judgment on the basis that they successfully rebutted the community property presumption as a matter of law by "clear and convincing evidence" because the Billingsley parties failed to produce any documentary tracing evidence and multiple issues of material fact exist; (3) erred when it granted the Billingsley parties' motion on GEL's affirmative defenses of presumed grant, adverse possession, and estoppel by deed, because each defense raises substantial questions of material fact; and (4) abused its discretion when it overruled GEL's evidentiary objections to the Billingsley parties' summary judgment evidence. We affirm.

## I. *Background*

The mineral interests at issue were originally acquired in the 1970s by two brothers, Larry and Robert D. Billingsley. The central issue in this appeal is the characterization of mineral interests that were acquired by Larry during his marriage to Alisa Nicole Marie Louise Curtis (Nickie). GEL is the sole successor to Nickie's purported community property share in the disputed mineral interests—25% of the executive rights, 12.5% of the rights to bonus payments and delay rentals, and 6.25% of the rights to a participating royalty in the SE/4.

### A. *Larry and Robert Acquire Adjoining Quarter Sections of Land*

Larry and Nickie married in 1977. On April 10, 1978, via two separate transactions with S.T. Johnson, Jr., Larry and Robert each acquired adjoining quarter

sections in the south half (S/2) of Section 19, Block 35, Township 2 North, T&P Railway Company Survey, in Martin County. Larry acquired the southwest quarter of Section 19 (the SW/4) and Robert acquired the southeast quarter of Section 19 (the SE/4). Each transaction conveyed 100% of the surface estate, 100% of the executive rights, 50% of the rights to delay rentals and bonus payments, and 50% of the right to royalties of each quarter section.

Although Larry acquired his interest in the SW/4 during his marriage to Nickie, the 1978 Johnson-to-Larry deed expressly recited that the consideration for this acquisition was paid with Larry's separate property funds. The deed also stated that Larry would assume and pay off certain notes that were attached to the property as though he were the "sole owner and sole obligor" and that Johnson "agreed to look only to the separate pr[o]perty of [Larry] for [] payment" with respect to a vendor's lien note that Larry owed to Johnson. Finally, the deed also stated that the acquired property "shall be" Larry's separate property.

On the same date, Larry also executed a deed of trust payable to Johnson. The deed of trust used Larry's interest in the SW/4 as security for the vendor's lien and expressly stated that Nickie was not a party to this transaction, because the SW/4 was "[Larry's] sole and separate property, and further [that] the property conveyed constitute[d] no part of his homestead." The last paragraph of the deed of trust stated:

> It is recognized and agreed that the funds advanced to [Larry] pursuant to the note secured hereby were advanced to [Larry] as his separate property, and that it is intended that the property described herein shall be the separate property of [Larry] and in order to effectuate such intention, the holder of the obligation secured hereby has agreed and does agree to look only to the separate property of [Larry], including, without limitation, the [SW/4 of Section 19], for satisfaction of the obligation secured by this deed of trust.

3

B.  *The Disputed Interest: Larry and Robert Exchange Minerals*

In January 1979, by separate mineral deeds, Robert conveyed an undivided one-half interest of his mineral interest in the SE/4 to Larry, and Larry simultaneously conveyed an undivided one-half interest of his mineral interest in the SW/4 to Robert.  Both mineral deeds that effectuated these exchanges were filed of record and publicly recorded on February 1, 1979.  The Robert-to-Larry mineral deed identified the grantor as "Robert D. Billingsley, a single man, having never been married," and the grantee as "Larry Billingsley."  This mineral deed did not contain any separate property recitals or references to separate property consideration.  The Larrry-to-Robert mineral deed recited that the interest Larry conveyed to Robert was Larry's "separate property and constitute[d] no part of [his] homestead."

The two mineral deeds executed by Larry and Robert were used to exchange one half of each other's mineral interests in their respective quarters, and each recited that a nominal ten-dollar cash consideration was paid between them.  However, Robert testified in his deposition and attested in his affidavit that no money or other form of consideration changed hands between them; the exchange was purely a "swap" of a portion of each other's mineral interests.

In this case, GEL claims title to one-half of the interest that Larry acquired in the 1979 Robert-to-Larry mineral deed asserting that this half-interest is Nickie's community estate share.  This interest—25% of the executive rights, 12.5% of the rights to bonus payments and delay rentals, and 6.25% of the right to participating royalty in the SE/4—is the focus of the parties' dispute.

C.  *The Brothers Treat Their Interests as Separate Property*

In September 1979, Larry and Robert executed an oil, gas, and mineral lease with RK Petroleum in which the brothers stated they were "each dealing in their

separate property" in leasing the SW/4 and SE/4. The 1979 oil and gas lease was recorded in Martin County in November 1979. In October 1979, Larry and Robert executed a "Rental Division Order," which certified their ownership of the delay rentals in the S/2 and ratified the lease. In this document, which was recorded in Martin County, the brothers again stated that they were "each dealing in their separate property."

In 1985, Larry and Robert executed another oil and gas lease on the S/2. The brothers again stated in this lease that each of them was "dealing in their separate property." Like the other documents, this lease was recorded in Martin County. Larry and Robert also executed a rental division order that corresponded with the 1985 lease, in which they once again stated that they were "each dealing in [their] separate property." The 1985 rental division order was recorded in Martin County.

D. *Nickie Treats the Disputed Interest as Separate Property*

In 1982 and 1985, Larry and Nickie executed a real estate deed of trust for the benefit of the United States Department of Agriculture, each of which was recorded in Martin County. Both deeds of trust expressly scheduled ten discrete instruments that encumbered and burdened the interests owned by Larry in the SW/4, which is identified as "Tract One" in those instruments. The schedules included the 1978 Johnson-to-Larry deed, the 1979 Larry-to-Robert mineral deed, and the 1979 oil and gas lease executed by the brothers. Nickie signed and executed both deeds of trust.

E. *Larry Dies and the Disputed Interest is Bequeathed to a Trust for Nickie's Benefit with the Remainder to Larry's Siblings*

After Larry passed away in September 1986, Nickie presented a will that allegedly had been executed by him, which was admitted to probate (the First Will). Under this will, Larry purportedly devised his entire estate to Nickie and appointed her independent executrix of his estate.

Nickie died intestate in October 1987. She was survived by her son from another marriage, Christopher Curtis. Several months after Nickie's death, Edward Billingsley, Larry and Robert's brother, presented a second, later-in-time will that Larry executed (the Second Will); Edward successfully set aside the First Will, revoked the letters testamentary, and had the Second Will admitted to probate.

Under the Second Will, Larry devised his estate, including his entire interest in the SE/4, to the Nickie Louise Billingsley Trust for Nickie's benefit during her lifetime. The Second Will provided that, upon Nickie's death, Larry's estate would be distributed in equal shares to his surviving brothers and sisters. Edward was appointed independent executor of Larry's estate and the trustee of the Nickie Louise Billingsley Trust.

In January 1994, Larry's other siblings conveyed to Robert what had been all of Larry's mineral interest in the SE/4. This conveyance was recorded in Martin County. Following the execution of this conveyance, Robert purportedly owned 100% of the executive rights, 50% of the delay rentals and bonus payments, and 50% of the right to receive royalties in the SE/4.

F. *The Billingsley Parties Treat the Disputed Interest as Larry's Separate Property*

In March 1994, Robert executed a "Memorandum of Option to Acquire Oil, Gas and Mineral Lease" to Dutch-Irish Oil, Inc., as lessee, that covered the SE/4. Robert expressly conveyed "an exclusive option to acquire an Oil, Gas and Mineral Lease covering all of the unleased portions of [the SE/4]." This transaction was recorded in Martin County.

In January 2004, Robert and his wife, Freeda, conveyed the SE/4 to Davis, including the surface estate and their entire interest in the mineral estate. In doing so, Robert and Freeda reserved life estates in 95% of all bonus payments, delay

rentals, and royalties, and 50% of their mineral estate executive rights, with the remainder to Davis.

In March 2005, Davis, Robert, and Freeda—the Billingsley parties—executed an oil and gas lease covering the entirety of the SE/4 for a primary term of two years. In May 2007, they executed a second oil and gas lease covering the entire SE/4. They later ratified that lease and acknowledged an extension payment and renewal bonus. The 2007 oil and gas lease was conveyed to Patriot Resources Partners LLC, which drilled a well on the SE/4; this well has been producing since October 2010.

For more than a decade, the Billingsley parties were assessed, and they paid, all ad valorem taxes associated with the oil and gas production from the entire SE/4, including the disputed interest. From 2010 to November 2023, the wells associated with this lease collectively produced over 124,000 barrels of oil and almost 259,000 MCF of gas, and the Billingsley parties received royalties from their ownership of these wells and the SE/4 during that time.

G. *GEL Purportedly Acquires Nickie's Community Property Interest and Sues to Quiet Title*

GEL contacted and solicited Curtis, Nickie's son, while Curtis was incarcerated and later when he was residing in a State-operated rehabilitation facility in El Paso. GEL's sole member, Sean Gregory Griffin, a licensed Texas attorney, paid Curtis $20,000 cash in exchange for a mineral deed, which Griffin supplied, that purportedly conveyed to GEL all mineral interests that Curtis owned in Martin County. In January 2023, Griffin recorded this mineral deed in Martin County.

In August 2023, GEL filed suit to quiet title and for money had and received against the Billingsley parties and asserted that the disputed interest that Larry acquired in SE/4 from Robert in 1979 was a community property interest. After GEL filed suit, Robert and Freeda sold their life estate mineral interests in the SE/4

to Davis, who now purportedly owns all the disputed interest. Robert and Freeda answered GEL's suit, and Davis filed a counterclaim to quiet title; the Billingsley parties collectively also asserted title to the disputed interest by several affirmative defenses—including the presumed-grant doctrine, adverse possession, and estoppel by deed.

During the pendency of the underlying suit, Robert, Freeda, Davis, Curtis, and Griffin were deposed. Robert testified that he and Larry desired to share equally in the proceeds that were derived from any oil and gas well drilled in either of their quarter-sections. Robert also testified that no money or other consideration changed hands in the 1979 mineral swap between him and Larry; only the minerals themselves were exchanged. Robert further stated that he never intended to give any mineral interest to Nickie, and he would not have done so.

The parties later filed cross-motions for summary judgment. The Billingsley parties attached thirty-five exhibits to their motion, including the relevant deeds, other chain of title documents, Robert's affidavit, excerpts from the depositions of Robert, Freeda, Curtis, and Griffin, and a declaration from Davis. They also attached an additional five exhibits to their response to GEL's motion for summary judgment. GEL filed written objections to Robert's affidavit, a letter from a law firm that was involved in the 1978 Johnson transactions, and Davis's declaration.

After a hearing, the trial court overruled GEL's objections, denied GEL's motion, and granted the Billingsley parties' motion. The trial court signed a final judgment that quieted title to the disputed interest in the Billingsley parties, removed GEL's purported mineral deed as a cloud on Davis's title, and ordered that GEL take nothing on its claims. GEL now appeals the trial court's final judgment as to its disposition of GEL's quiet title claim but does not challenge the judgment as to its claim for money had and received.

## II. *Standards of Review*

We review a trial court's grant of summary judgment de novo. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 837 (Tex. 2018). To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c);[1] *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). If the movant meets its summary judgment burden, the burden shifts to the nonmovant to raise a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

---

[1]We note that the supreme court has revised Rule 166a. Although the "rewrite is not intended to substantively change the law," it has resulted in a renumbering of the provisions of the rule. *See* Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). The amendments to this rule only apply to motions for summary judgment filed on or after March 1, 2026. Because the parties' cross-motions for summary judgment in this case were filed prior to that date, we refer to the rule in effect at the time the parties' cross-motions were filed. *See id.*

When cross-motions for summary judgment are filed, each party bears the burden to establish that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). Thus, when the trial court grants one motion and denies the other, as it did here, we must consider all the summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

We review a trial court's decision to exclude or admit summary judgment evidence for an abuse of discretion. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018) (citing *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017)). An abuse of discretion occurs if the court "acted without reference to any guiding rules or principles." *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (quoting *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)). Summary judgment evidence must be presented in a form that would be admissible at trial. *Estate of Guerrero*, 465 S.W.3d 693, 706 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). That is, the same evidentiary standards that apply for trials also control the admissibility of evidence in summary-judgment proceedings. *See FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022).

If a trial court abuses its discretion and erroneously admits or excludes evidence, we must determine whether the error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1); *Campbell v. Hendershot Equip. Co., Inc.*, 717 S.W.3d 494, 515 (Tex. App.—Eastland 2025, pet. denied). We review the entire record to determine whether an error is harmful. *Campbell*, 717 S.W.3d at 515 (citing *Gunn v. McCoy*, 554 S.W.3d 645, 668–69 (Tex. 2018)). "Whether an erroneous exclusion [or admission] of evidence probably caused the rendition of an

10

improper judgment is 'a judgment call entrusted to the sound discretion [and] good sense of the reviewing court from an evaluation of the whole case.'" *City of Stephenville v. Belew*, 692 S.W.3d 347, 361 (Tex. App.—Eastland 2024, pet. denied) (quoting *First Emps. Ins. Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex. 1983)).

### III. *Analysis*

All of GEL's issues on appeal address discrete aspects of a single overarching question: whether the trial court erred when it granted summary judgment in favor of the Billingsley parties, rather than GEL, and quieted title to the disputed interest in them. We conclude that it did not.

### A. *Evidentiary Objections*

In its fourth issue, GEL argues that the trial court abused its discretion when it overruled GEL's objections to the Billingsley parties' summary judgment evidence. Because the trial court's rulings impact the evidence that we may consider on appeal, we address this issue first. *See Target Strike, Inc. v. Strasburger & Price, L.L.P.*, No. 05-18-00434-CV, 2018 WL 6040022, at *3 (Tex. App.—Dallas Nov. 19, 2018, pet. denied) (mem. op.).

GEL filed forty-six written objections to the Billingsley parties' summary judgment evidence, specifically challenging (1) Robert's affidavit, (2) a letter dated March 21, 1978, from a law firm concerning the Johnson transactions, and (3) Davis's declaration. In its appellate brief, GEL states that its forty-six objections are incorporated by reference into its brief, that the trial court overruled these objections without reference to any guiding rules or principles, and that we should find this to be a "per se an abuse of discretion." GEL then explains that if the Billingsley parties' summary judgment evidence was excluded, as it argues it should have been, there would be no competent evidence supporting, "among other things, [the Billingsley parties] 'like-kind exchange' argument because the only sources of this [exchange]

11

agreement are Robert's own self-serving testimony, Robert's conclusory statements in his [a]ffidavit, and the statements in the Declaration of [Davis]."

"It is insufficient simply to refer the appellate court to the party's trial court arguments [that are] made in response to a motion for summary judgment." *Target Strike*, 2018 WL 6040022, at *3; *see Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 325 (Tex. App.—Fort Worth 2007, pet. denied); *AT&T Corp. v. Sw. Bell Tel. Co.*, No. 05-99-00186-CV, 2000 WL 14711, at *7 (Tex. App.—Dallas Jan. 11, 2000, no pet.) (not designated for publication) (limiting review of objections to summary judgment evidence to those argued in the appellate brief and not to those cited to the clerk's record). "Were we to approve of this tactic, appellate briefs would be reduced to a simple appellate record reference to a party's trial court arguments." *Guerrero v. Tarrant Cnty. Mortician Servs. Co.*, 977 S.W.2d 829, 832 (Tex. App.—Fort Worth 1998, pet. denied).

GEL does discuss its objections to Robert's affidavit in its appellate brief. Of its forty-six written objections, twenty-four pertained to Robert's affidavit. GEL also globally objected and asserted that Robert's affidavit is speculative, conclusory, not based on personal knowledge, and included improper legal conclusions; its twenty-four objections generally track these same bases.

Except for the limited discussion in its brief regarding Robert's affidavit, GEL has waived this issue because of inadequate briefing. *Target Strike*, 2018 WL 6040022, at *3; *see* TEX. R. APP. P. 38.1(i) (An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (Error may be forfeited through inadequate briefing.). But despite GEL's waiver, and as we discuss below, the character of the SW/4 may be determined without reference to Robert's affidavit.

Further, we need not determine whether Robert's affidavit should have been excluded as incompetent summary judgment evidence, as GEL suggests, because GEL did not object to Robert's deposition testimony—in which Robert unequivocally testified that, in the 1979 mineral transactions between he and Larry, no money or other consideration changed hands between them beyond the exchanged minerals—which the Billingsley parties offered as summary judgment evidence. This statement is competent summary judgment evidence because Robert was a party to these transactions and therefore had personal knowledge of the consideration that was exchanged. *See* TEX. R. EVID. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."). Robert's statement also is uncontroverted. Here, GEL offered no evidence of the disputed interest's character. Instead, it simply relies on the community property presumption and argues that there *is* no competent summary judgment evidence that the consideration in the mineral exchanges between Robert and Larry was separate property.[2]

Accordingly, we overrule GEL's fourth issue.

B. *The Character of the Disputed Interest*

In its first two issues, GEL asserts that the trial court erred when it denied GEL's motion for summary judgment and instead granted the Billingsley parties' competing motion because (1) "the undisputed evidence establishes the community property presumption," (2) the Billingsley parties failed to rebut this presumption by

---

[2]As we discuss below, GEL attempts to offer "some evidence" to rebut the separate property presumption that arises from the separate property recitals in the 1978 Johnson-to-Larry deed. This is not affirmative evidence of the disputed interest's character, nor is the community property presumption. *See, e.g.*, *Harris v. Harris*, 765 S.W.2d 798, 802 (Tex. App.—Houston [14th Dist.] 1989, writ denied) ("The presumption, which is not evidence, ceases to exist upon introduction of positive evidence to the contrary and is not then to be weighed or treated as evidence.").

clear and convincing evidence because they did not produce any competent tracing evidence, and (3) multiple material fact issues exist.

The Billingsley parties respond that (1) Larry purchased the SW/4 mineral interest as his separate property, using separate property funds, (2) the separate property character of Larry's SW/4 mineral interest was consideration for and mutated into a separate property mineral interest in the SE/4, and (3) Larry bequeathed his separate property interest in the SE/4 mineral interest to his surviving siblings, who collectively conveyed it to Robert.

### 1. *Larry acquired the SW/4 as his Separate Property*

GEL argues that the disputed interest is presumed to be community property because (1) it was acquired by Larry during his marriage to Nickie, and (2) the 1979 Robert-to-Larry mineral deed is unambiguous and does not contain separate property recitals. The Billingsley parties respond that (1) the separate property recitals in the 1978 Johnson-to-Larry deed establish that the SW/4 was Larry's separate property, and (2) Larry exchanged an undivided one-half mineral interest in the SW/4 as consideration for the disputed interest, which became Larry's separate property. In other words, the Billingsley parties contend that the inception of title and mutation of title doctrines confirm as a matter of law that the disputed interest was Larry's separate property.

Whether property that is owned by either party to a marriage is separate or community property depends on when and how the spouses acquired the property. A spouse's separate property, both real and personal, consists of (1) property owned or claimed by the spouse prior to the marriage, (2) property acquired by the spouse during marriage by gift, devise, or descent, and (3) the recovery for personal injuries sustained by the spouse during marriage, except for any recovery for loss of earning capacity during the marriage. TEX. FAM. CODE ANN. § 3.001 (West 2006); *see* TEX.

CONST. art. XVI, § 15. Unless otherwise agreed to in writing by both spouses, community property consists of the property, other than separate property, that is acquired by either spouse during marriage. FAM. §§ 3.002, 4.002–.003; *see* TEX. CONST. art. XVI, § 15. Generally, the "characterization of property is determined by the time and circumstances of its acquisition, often referred to as the 'inception of title' doctrine." *Attaguile v. Attaguile*, 584 S.W.3d 163, 173 (Tex. App.—El Paso 2018, no pet.); *see Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001); *Wells v. Wells*, 251 S.W.3d 834, 839 (Tex. App.—Eastland 2008, no pet.). "Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested." *Attaguile*, 584 S.W.3d at 173; *see John Hancock Mut. Life Ins. Co. v. Bennett*, 128 S.W.2d 791, 795 (Tex. 1939).

Property that is possessed by either spouse during their marriage or on the dissolution of their marriage is presumed to be community property. FAM. § 3.003(a). This presumption may be rebutted by clear and convincing evidence. *Id.* § 3.003(b). Clear and convincing evidence means the measure of proof that will produce a firm belief as to the truth of the allegation in the mind of the trier of fact. *Id.* § 101.007. The primary consideration is the spouses' intent, as shown by the circumstances surrounding the property's acquisition. *Welder v. Welder*, 794 S.W.2d 420, 427 (Tex. App.—Corpus Christi–Edinburg 1990, no writ). "Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property" by tracing the property to its separate property origin. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011); *see Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). Under the doctrine of tracing, mutations and changes in the form of property do not affect its separate property character so long as it can be definitely traced and identified. *Weed v. Frost Bank*,

565 S.W.3d 397, 402 (Tex. App.—San Antonio 2018, pet. denied) (citing *Tarver v. Tarver*, 394 S.W.2d 780, 783–86 (Tex. 1965)).

Here, the community property presumption applies to the disputed interest because it was acquired by Larry during his marriage to Nickie, and the deed for it contains no separate property recitals. *See* FAM. § 3.003(a); *In re Marriage of Nash*, 644 S.W.3d 683, 697–98 (Tex. App.—Texarkana 2022, no pet.). The burden was therefore on the Billingsley parties to rebut this presumption by clear and convincing evidence. *See* FAM. § 3.003(b); *Pearson*, 332 S.W.3d at 363; *Cockerham*, 527 S.W.2d at 167. The rebuttal evidence that they presented to trace and establish the disputed interest's separate property character consists of the 1978 Johnson-to-Larry deed for the SW/4. Importantly, *that* deed contains separate property recitals.

a. *Separate Property Presumptions Generally*

"Although we begin with a community property presumption, a presumption of separate property arises where the instrument of conveyance contains a separate property recital." *Marriage of Nash*, 644 S.W.3d at 702 (quoting *Cardenas v. Cardenas*, No. 13-16-00064-CV, 2017 WL 1089683, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 23, 2017, no pet.) (mem. op.) (internal quotations marks omitted)); *see In re Marriage of Crist*, 661 S.W.3d 623, 627 (Tex. App.—El Paso 2023, no pet.) (citing *Stearns v. Martens*, 476 S.W.3d 541, 547 n.4 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). An instrument that contains a separate property recital—a recital that "the consideration comes from the separate property of a spouse or that the property is transferred to a spouse as the transferee's separate property or the transferee's separate use"—negates the community property presumption and instead creates a rebuttable presumption of separate property in its place. *Marriage of Nash*, 644 S.W.3d at 703 (quoting *Cardenas*, 2017 WL 1089683, at *2); *see Marriage of Crist*, 661 S.W.3d at 627. The burden to rebut this

presumption is on the spouse or party who seeks to defeat it. *Marriage of Crist*, 661 S.W.3d at 627; *Marriage of Nash*, 644 S.W.3d at 703.

The 1978 Johnson-to-Larry deed recites that Larry's consideration for the SW/4 is "OUT OF HIS SEPARATE FUNDS AND SEPARATE PROPERTY." It states that Larry agrees to assume and pay off one-half of the balance of two promissory notes, owed to the Federal Land Bank of Houston and the Farmer's Home Administration (FHA), respectively, and that Larry "obligates and binds himself to comply with [the associated] deed of trust to the same extent as though he were the sole owner and sole obligor." It also states that Larry agreed to execute a vendor's lien note payable to Johnson and that Johnson "agreed to look only to the separate pr[o]perty of [Larry] for its payment, to the end that the . . . land shall be the separate property of [Larry]." The deed's granting clause further states that Johnson conveyed the SW/4 to "Larry Billingsley, as his separate property" and the habendum clause similarly described the conveyance to Larry "as his separate property."

### b. *Credit Acquisitions are Presumed to be Community Property*

GEL contends that these separate property recitals in the 1978 Johnson-to-Larry deed do not apply or are not effective as to the promissory notes owed to the Federal Land Bank of Houston and the FHA, and that these debts are presumed to be on community credit. We disagree.

The 1978 deed and associated deed of trust recite that Johnson will look solely to Larry's separate property for the satisfaction of the promissory note between them; it does not do so for the promissory notes to the Federal Land Bank of Houston and the FHA. For these, the deed recited that Larry "obligates and binds himself to comply with all provisions and requirements in said deed[s] of trust" as if he is the

"sole owner and sole obligor." GEL argues that this means we must presume that Larry assumed the debt on community credit.

By its separate property recitals, the 1978 deed clearly shows the parties' intent that Larry would acquire the SW/4 as his separate property. As GEL points out, debts contracted during marriage are presumed to be on community credit unless it is shown that the creditor agrees to look solely to the separate estate of the contracting spouse for the satisfaction of the indebtedness; the intent of the spouses does not control. *See Marriage of Nash*, 644 S.W.3d at 701 (citing *Welder*, 794 S.W.2d at 428); *Jurek v. Jurek-Couch*, 296 S.W.3d 864, 874 (Tex. App.—El Paso 2009, no pet.) (citing *Holloway v. Holloway*, 671 S.W.2d 51, 57 (Tex. App.—Dallas 1983, writ dism'd)); *Mock v. Mock*, 216 S.W.3d 370, 374 (Tex. App.—Eastland 2006, pet. denied) (citing *Cockerham*, 527 S.W.2d at 171); *Jones v. Jones*, 890 S.W.2d 471, 475 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied); *Glover v. Henry*, 749 S.W.2d 502, 503 (Tex. App.—Eastland 1988, no writ.).

c. *The SW/4 is Presumed to be Larry's Separate Property*

However, this rule is inapplicable to the consideration in the 1978 Johnson-to-Larry deed because Larry agreed to "assume *and pay off*" the third-party debts "OUT OF HIS SEPARATE FUNDS AND SEPARATE PROPERTY."[3] (Emphasis added). Because the deed recited that all consideration shall be derived from Larry's

---

[3]Although the Billingsley parties do not reference them in their appellate brief, they attached to their response to GEL's motion for summary judgment (1) a letter, dated March 21, 1978, from the attorney who represented Johnson to the attorney who represented Larry and Robert, which analyzed the sales prices of both the conveyances from Johnson to Larry and Robert, (2) releases from both liens related to the Federal Land Bank of Houston and the FHA, and (3) the deed of trust from the FHA. The correspondence between the Johnson and Billingsley attorneys, dated just prior to the execution of the 1978 deed, shows that the Federal Land Bank lien and the FHA lien to be assumed by Larry were to be paid off "at the time of the closing." The releases, recorded on April 17 and May 23, 1978, indicate that they were. Although GEL objected to the letter in the trial court, as we have discussed, it waived any complaint regarding this evidence on appeal.

separate funds and separate property, we conclude that this creates a separate property presumption in his favor.[4] *See, e.g., Marriage of Nash*, 644 S.W.3d at 702–03 (holding that a deed recital that land was conveyed to the husband "a married man, as his sole and separate property and not joined [by] his spouse" together with a promissory note signed only by the husband and a deed of trust signed by both spouses but listing only the husband as the borrower created a separate property presumption); *In re Marriage of Brent*, No. 07-11-00223-CV, 2013 WL 683333, at *2 (Tex. App.—Amarillo Feb. 21, 2013, pet. denied) (mem. op.) (holding that promissory note recitals that the debt was from the wife's separate funds was prima facie evidence that the money loaned was separate property); *see Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 430–31 (Tex. 1970) (holding that because of deed recitals that land was conveyed to the wife as her sole and separate property and that the consideration was from her separate estate, no community property presumption existed).

### d. *Parol Evidence is Admissible to Rebut the Separate Property Presumption*

GEL may use parol evidence to carry its burden to rebut the separate property presumption because Nickie was not a party to the 1978 deed between Johnson and Larry. *See Marriage of Nash*, 644 S.W.3d at 703–04 ("While this presumption is generally rebuttable, the deed recital is conclusive if the other spouse is also a party to the transaction and cannot be rebutted in the absence of duress, fraud, accident, or mistake."); *Weed*, 565 S.W.3d at 407 (citing *Hodge*, 277 S.W.2d at 906–07). This is a burden of production—if GEL produces "some evidence" that the property was

---

[4]GEL asserts that the Billingsley parties must present tracing evidence of the funds that support these separate property recitals, and that mere testimony is insufficient to rebut the community property presumption. But as to the 1978 deed between Johnson and Larry, which contains separate property recitals, it is GEL that bears the initial burden to produce evidence to rebut that the separate property presumption applies to that deed. *See Marriage of Nash*, 644 S.W.3d at 703–04; *Weed*, 565 S.W.3d at 407.

community property the burden shifts back to the Billingsley parties to prove that the property is in fact separate property. *See Marriage of Nash*, 644 S.W.3d at 703–04; *Weed*, 565 S.W.3d at 407. "Evidence of 'substantial amounts of the community type funds in relation to the amount of separate funds involved,' 'the large total consideration paid for the properties,' and 'the absence of evidence as to other separate property that might have been employed' is sufficient to rebut the separate property presumption created by a deed recital." *Marriage of Nash*, 644 S.W.3d at 704–05 (quoting *Weed*, 565 S.W.3d at 406).

GEL asserts that it rebutted the separate property presumption of the 1978 deed by presenting evidence of numerous other transactions that occurred during Larry's marriage to Nickie, in which the vesting deeds for these transactions do not contain separate property recitals but show that Larry later sold portions of these properties to third parties and repeatedly mischaracterized them as his separate property. GEL asserts that Nickie was not a party to those other transactions, there is no evidence that she was aware of them, and therefore there is ample evidence that Larry misrepresented and mischaracterized the true character of the disputed interest in this case.

GEL also urges that we should view the omission of any reference to the disputed interest in Larry's estate inventory as further evidence of its community property character. It points out that, in an unrelated transaction between Robert and Larry that occurred less than three months after their 1979 mineral exchange, the deed in that unrelated transaction was in Larry's name only and did not include any separate property recitals. The consideration recited in this deed was, like the 1979 Robert-to-Larry mineral deed, $10.00 and "other good and valuable consideration." Despite these similarities, the property acquired by this unrelated transaction was designated in Larry's estate inventory as community property, whereas the disputed

interests were entirely omitted and are now claimed as Larry's separate property. GEL therefore argues that the "significant inconsistencies and contradictions in the way Larry claimed and identified his real property interests throughout his marriage is more than enough evidence" to rebut the separate property presumption created by the 1978 Johnson-to-Larry deed.

We disagree with GEL and conclude that these unrelated transactions do not meet GEL's burden of production to rebut the separate property presumption. Whether Larry inaccurately characterized other property as his separate property is not at issue here and has no bearing on whether the disputed interest was his separate property. *See Attaguile*, 584 S.W.3d at 173 ("[C]haracterization of property is determined by the time and circumstances of its acquisition."). Moreover, the mere absence of the disputed interest in Larry's estate inventory does not change its character (and neither GEL nor any other entity has challenged the probate of Larry's estate). *See White v. Pope*, 664 S.W.2d 105, 108 (Tex. App.—Corpus Christi–Edinburg 1983, no writ) ("An order of the probate court approving an inventory is not an adjudication of title." (citing *McKinley v. McKinley*, 496 S.W.2d 540, 542 (Tex. 1973))).

Finally, an unrelated deed between the brothers that shows the same recital of consideration reveals nothing about the effect of the 1979 Robert-to-Larry deed. *See, e.g.*, *Attaguile*, 584 S.W.3d at 173. In this case, GEL offered no evidence regarding community or separate funds. As such, we conclude that GEL failed to produce evidence to rebut the separate property presumption in the 1978 Johnson-to-Larry deed that conveyed the SW/4 to Larry. *See Marriage of Nash*, 644 S.W.3d at 703–04; *Weed*, 565 S.W.3d at 407.

2. *The separate property character was preserved in the brothers' mineral exchange*

Next, GEL contends that (1) the 1979 Robert-to-Larry mineral deed that conveyed the disputed interest to Larry is presumed to be community property because it did not contain separate property recitals, (2) the Billingsley parties failed to rebut this presumption by clear and convincing evidence, and (3) GEL is the sole successor to Nickie's purported community property, the disputed interest. The Billingsley parties contend that the only consideration in each of the 1979 mineral deeds was the corresponding mineral interest that was exchanged; thus, this in-kind "swap" between Robert and Larry preserved the separate property character of Larry's mineral interest in the SE/4 when he exchanged his separate property—a mineral interest in the SW/4—for it. We agree with the Billingsley parties.

"Property acquired in exchange for separate property becomes the separate property of the spouse who exchanged the property." *Ridgell v. Ridgell*, 960 S.W.2d 144, 148 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.) (citing *Dixon v. Sanderson*, 10 S.W. 535, 536 (Tex. 1888)); *see In re Marriage of Douthit*, 573 S.W.3d 927, 930 (Tex. App.—Amarillo 2019, no pet.); *Barras v. Barras*, 396 S.W.3d 154, 167 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Newland v. Newland*, 529 S.W.2d 105, 107 (Tex. App.—Fort Worth 1975, writ dism'd). Stated another way, "separate property that merely undergoes mutations or changes in form remains separate property." *Sanders v. Sanders*, No. 02-08-00201-CV, 2010 WL 4056196, at *16 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.) (citing *Legrand-Brock v. Brock*, 246 S.W.3d 318, 321 (Tex. App.—Beaumont 2008, pet. denied)).

GEL argues that the 1979 mineral deed is unambiguous: it stated that in consideration of $10.00 and "other good and valuable consideration" Robert grants

to Larry one-half of his undivided interest in the SE/4 minerals. It contains no separate property recitals, nor does it reference any other deed or other form of consideration. The conveyance was executed during Larry's marriage to Nickie. Therefore, GEL contends that we should restrict our construction of the deed's meaning to its four corners and refuse to consider any parol evidence.

We agree that the 1979 deed is unambiguous. But contrary to GEL's assertion, the characterization of property as either separate or community property may be established by parol evidence—that is, if the conveying instrument contains no separate property recitals. *See Stearns*, 476 S.W.3d at 548; *Reaves v. Reaves*, No. 11-11-00026-CV, 2012 WL 3799668, at *6 (Tex. App.—Eastland Aug. 31, 2012, no pet.) (mem. op.) ("Because the contract does not expressly recite the character and use of the property, we find that the parol evidence rule does not prevent introduction of evidence to rebut the presumption of a gift."); *Bahr v. Kohr*, 980 S.W.2d 723, 726–27 (Tex. App.—San Antonio 1998, no pet.) ("Because the [] deed does not expressly recite the character and use of the property, we find that the parol evidence rule does not prevent introduction of evidence to rebut the presumptions of community property and gift."). Here, and as GEL emphasizes, the 1979 Robert-to-Larry mineral deed contains no separate property recitals.

Even disregarding Robert's affidavit, as we have discussed, the evidence of the separate property character of the disputed interest is clear and conclusive. *See, e.g.*, *Marriage of Nash*, 644 S.W.3d at 702–03. In his deposition, Robert testified that he and Larry desired to share equally in the proceeds that were derived from any oil and gas well drilled on either of their quarter-sections. He also testified that no money or other form of consideration changed hands in the 1979 mineral exchange between him and Larry, and that only the minerals themselves were exchanged. Robert further stated that he did not intend to give any mineral interest to Nickie and

23

would not have done so. Beyond its general argument against the use of parol evidence, GEL did not object to this testimony in the trial court and does not complain that it should be disregarded on appeal.

In addition to Robert's testimony, the Billingsley parties point to the contemporaneous execution and filing of the 1979 mineral deeds as evidence of Larry's and Robert's in-kind "swap." After the 1979 transactions, Larry repeatedly represented that he owned as his separate property the entire SE/4 interest that he received from Robert. In 1979 and 1985, Larry and Robert executed oil, gas, and mineral leases that involved the disputed interest. In each lease, the brothers stated they were "dealing in their separate property" in leasing the SW/4 and SE/4. Each time, they also executed corresponding rental division orders, which certified their ownership of delay rentals in the S/2, ratified the lease, and again stated that they were "each dealing in their separate property." These documents were all recorded in Martin County.

In 1982 and 1985, Larry and Nickie together executed real estate deeds of trust, each of which expressly scheduled ten discrete instruments that encumbered and burdened the interests owned by Larry in the SW/4, which is identified as "Tract One" in those instruments. The 1978 Johnson-to-Larry deed, the 1979 Larry-to-Robert mineral deed, and the 1979 oil and gas lease are all included in those schedules. Nickie signed and executed each deed of trust, thus ratifying that they were subject to both the 1978 Johnson deed and the 1979 mineral deed that we have analyzed above.

Finally, GEL does not challenge Larry's will or the probate of his estate. Pursuant to Larry's will, his interest in the SE/4, including the disputed interest, was devised to his surviving siblings, who collectively conveyed it to Robert. Robert and Freeda later conveyed the disputed interest to Davis.

Based on the record before us, we conclude that the Billingsley parties have conclusively established their title in the disputed interest as a matter of law. *See* TEX. R. CIV. P. 166a(c); *ConocoPhillips*, 547 S.W.3d at 865. Larry acquired the SW/4 as his separate property pursuant to the recitals in the 1978 Johnson deed, which GEL failed to rebut. Larry then swapped an undivided one-half mineral interest in the SW/4 in exchange for the same interest in the SE/4, thereby retaining the separate property character of his property. GEL offered no competent summary judgment evidence to the contrary, waived most of its evidentiary objections on appeal, and failed to raise a genuine issue of material fact regarding the character of the disputed interest.

Accordingly, we overrule GEL's first and second issues.[5]

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

March 5, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[5]Because we hold that the Billingsley parties conclusively established that the disputed interest was Larry's separate property, we need not reach GEL's third issue, which concerns the Billingsley parties' affirmative defenses. *See* TEX. R. APP. P. 47.1.